[Cite as *In re J.M.*, 2017-Ohio-1027.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.M.

C.A. No.     28315

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 14-02-112

DECISION AND JOURNAL ENTRY

Dated: March 22, 2017

SCHAFER, Judge.

{¶1}   Appellant, James M. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of CSB.  This Court affirms.

I.

{¶2}   Father is the biological father of J.M., born February 17, 2014.  Although the child's mother ("Mother") appealed from the trial court's judgment, this Court dismissed her appeal because she failed to file a brief in compliance with this Court's local rules.

{¶3}   J.M. was removed from Mother's custody shortly after his birth because Mother had permanently lost custody of three older children in prior juvenile court cases.  As in the cases involving Mother's older children, CSB remained concerned that Mother lacked stable income and housing and that she suffered from untreated mental health and substance abuse problems.  J.M. was later adjudicated a dependent child.

{¶4} When this case began, Mother and Father resided in separate homes and Father had no other biological children. J.M. was initially placed in the custody of Father under an order of protective supervision by CSB, which further required that Mother not reside in the home and that all visits between Mother and J.M. be supervised by Father or another adult approved by CSB. Approximately five months later, however, J.M. was removed from Father's custody after a physical altercation between Father and Mother that involved substance abuse and physical violence by both parents.

{¶5} While J.M. was placed in the temporary custody of CSB for more than one year, the parents made little progress toward reunification. They had both been referred to ongoing individual counseling based on their multiple mental health diagnoses. Nevertheless, neither parent followed through with regular mental health treatment. Their on and off relationship also continued to be plagued by untreated alcohol abuse and domestic violence, and neither parent had stable income or housing. Moreover, neither parent visited J.M. on a consistent basis.

{¶6} On January 20, 2016, CSB moved for permanent custody of J.M. Following a hearing on the motion and Father's alternative motion to place J.M. in the legal custody of the paternal step-grandmother, the trial court terminated parental rights and placed J.M. in the permanent custody of CSB. Father appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE CLEAR AND CONVINCING EVIDENCE WAS NOT PRESENTED TO WARRANT A FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILD PURSUANT TO [R.C.] 2151.414(D), AND THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Father's sole assignment of error is that the evidence did not support the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶8} The trial court found that CSB satisfied the first prong of the permanent custody test because the child had been in the temporary custody of CSB for more than 12 of the prior 22 months. Father does not challenge that finding but confines his assignment of error to the trial court's best interest determination.

{¶9} Although Father assigns error to the trial court's best interest finding, he argues primarily that CSB failed to make reasonable efforts to reunify J.M. with Father or a relative. Father did not raise this issue in the trial court, nor has he separately assigned it as error. At the permanent custody hearing, the trial court was not required to determine whether CSB had made reasonable efforts toward reunification, given that it had made prior reasonable efforts findings and neither parent argued at the hearing that CSB had failed to make reasonable reunification efforts in this case. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43; *In re P.W.T.*,

9th Dist. Wayne No. 11CA0020, 2011-Ohio-5858, ¶ 11; *In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9-10.

{¶10} Consequently, this Court confines its review to the trial court's conclusion that permanent custody was in the best interest of J.M. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, his wishes, the custodial history of the child, and his need for permanence in his life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶11} Since J.M. was removed from Father's temporary custody during July 2014, Father's interaction with him had been limited to visits that were supervised or monitored by CSB because Father had not completed any of the reunification requirements of the case plan. Notably, he had refused to engage in substance abuse, mental health, or anger management treatment because he did not believe that he had a problem. CSB presented evidence, however, that Father continued to abuse alcohol and become involved in physical altercations throughout the case. Although Father told CSB otherwise, there was evidence that he and Mother had continued their violent relationship and were living together. As recently as two months before the hearing, police responded to a loud physical altercation between Father and Mother outside their home. One police officer who responded to the scene testified that both parents were intoxicated and that he had to physically separate them.

{¶12} Father points to evidence that his visits with J.M. went well and that the child would be happy to see him, but CSB had also presented evidence that Father did not visit J.M. on a consistent basis. In fact, because both parents had missed so many visits, CSB would not

transport J.M. to each visit until it received confirmation that one or both parents would attend the visit.

{¶13} Father asserts that his step-grandmother should have been awarded legal custody of J.M., but the grandmother had not developed a bond with the child. The grandmother visited J.M. a few times during this case, but witnesses testified that there was minimal interaction between them. At the time of the hearing, the grandmother had not visited J.M. for several months. Moreover, the grandmother lived in the home of a relative who was not willing to have J.M. placed in her home.

{¶14} After temporarily living in different relative placements, J.M. was placed with a foster family that was interested in adopting him. J.M. was doing well in that home and had become bonded with the members of that family. The guardian ad litem described the home as an appropriate and positive environment for J.M.

{¶15} Because J.M. was only two years old at the time of the hearing, the guardian ad litem spoke on his behalf and expressed her conclusion that permanent custody was in his best interest. She explained that the parents had not resolved any of their parenting problems. Specifically about Father, the guardian ad litem expressed concerns that he had not addressed any of the problems that had caused J.M. to be removed from his home, nor did he even admit that he had any problems.

{¶16} J.M.'s custodial history had included his entire lifetime living in temporary placements. By the time of the permanent custody hearing, J.M. had spent nearly two years living outside the custody of either parent and was in need of a legally secure permanent placement. The parents had failed to remedy any of their parenting problems and were not able to provide J.M. with a suitable home at that time or in the foreseeable future. Because CSB had

been unable to find a suitable relative for permanent placement, the trial court found that a legally secure permanent placement would only be achieved by placing J.M. in the permanent custody of CSB.

{¶17} Father has failed to demonstrate that the trial court's permanent custody judgment was against the manifest weight of the evidence. Consequently, his assignment of error is overruled.

### III.

{¶18} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                               _____

                                               JULIE A. SCHAFER
                                               FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ANTHONY J. COSTELLO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LINDA BENNETT, Guardian ad Litem.